## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| DELLE SWEGLER NADLER, MOANA SWEGLER LUKA, and MARK SWEGLER, derivatively on behalf of FADIAN DEVELOPMENT, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> MYUNG MOK BAE, B&K DEVELOPMENT, LLC, KEI ZA RYU BAE, and DOES 1-10, <br><br> Defendants, <br><br> and <br><br> FADIAN DEVELOPMENT, INC. | CIVIL CASE NO. CV0452-16 <br><br><br><br> DECISION AND ORDER |

## INTRODUCTION

This matter came before the Honorable Arthur R. Barcinas on May 7, 2019, upon Plaintiffs' Motion for Summary Judgment filed November 9, 2018. Plaintiffs Delle Swegler Nadler, Moana Swegler Luka, and the Estate of Mark Swegler (collectively, "Swegler Heirs"), derivatively on behalf of Fadian Development, Inc. ("Fadian"), were represented by Attorney Leslie A. Travis. Defendants Myung Mok Bae ("Bae") and Kei Za Ryu Bae ("Ryu") (collectively, "the Baes") were represented by Attorney Delia S. Lujan Wolff. Defendant B&K Development, LLC ("B&K") was represented by Attorney Georgette B. Concepcion. Having

reviewed the pleadings and having heard oral arguments in this matter, the Court issues the following Decision and Order.

## BACKGROUND

On March 21, 1989, Defendant Myung Mok Bae, along with several other shareholders, formed Jang Bok Developing Company, Ltd. ("Jang Bok"), a Guam corporation. See Travis Decl., Ex. 1; see also Bae Decl. ¶ 3, Ex. A. On October 19, 1989, Jang Bok amended its Articles of Incorporation, changing its company name to Fadian Development, Inc., and listing Bae, Ryu, and Delbert Swegler ("Swegler"), among others, as shareholders and directors of Fadian. See Travis Decl., Ex. 2; see also Bae Decl., Ex. D.

On January 10, 1992, Swegler and Bae, along with other corporate representatives of Fadian and Jang Bok, executed a Supplemental Agreement which would amend Fadian's Articles of Incorporation "to provide that a two-thirds vote of the shareholders will be required to accomplish . . . the sale or encumbrance of significant assets of the corporation." See Travis Decl., Ex. 3. Thereafter, on March 10, 1992, Fadian filed a Fourth Amended Articles of Incorporation. See Travis Decl., Ex. 4-5. Consistent with the Supplemental Agreement, Article Nineteen of the Fourth Amended Articles of Incorporation requires a two-thirds vote of the shareholders of the corporation to accomplish the sale or encumbrance of significant assets of the corporation. Id. Later, Swegler, Bae, and the President of Fadian, Dometro Pablo ("Pablo") executed a Cancellation of the January 10, 1992 Supplemental Agreement on December 11, 1992. See Bae Decl., Ex. G.

On July 14, 2012, Delbert Swegler died, testate. On August 21, 2012, Swegler's widow, Belen Swegler ("Belen"), filed in the Superior Court of Guam, a petition for probate of Swegler's will and to be appointed executrix of the estate in Probate Case No. PR0118-12 ("PR0118-12"). Approximately two years later, on July 7, 2014, Belen, the Swegler Heirs, and Karen Swegler, entered into a Settlement Agreement by which Swegler's 80,000 shares of common stock in Fadian were transferred to his children, Delle Swegler Nadler (18,667 shares), Moana Swegler Luka (18,667 shares), Mark Allan Swegler (18,667 shares), and Karen Swegler

(24,000 shares). See Travis Decl., Ex. 8; see also Travis Decl. II, Ex. 1. The Settlement Agreement provides in relevant part:

> *[Belen] shall cause to be transferred any and all interest in . . . personal property whether such interest is held in the name of . . . Delbert Swegler or Belen Swegler (individually): . . . (3) All of the interest and stock of FADIAN DEVELOPMENT, INC. ("Fadian"),* with a minimum of 40% stock interest, held in the name of the Estate or Belen Swegler ("Fadian Interest"), free and clear of any liens, charges, encumbrances at the time of transfer in the form attached hereto as Exhibit C, together with the stock certificate evidencing the shares held in the name of Delbert L. Swegler . . . . The Estate shall use its best efforts to obtain the stock certificate evidencing the Estate's 80,000 shares in Fadian ("Stock"), including requesting the issuance of the stock certificate evidencing the Estate's Interest, and filing a motion or petition directing Fadian to issue such stock certificate . . . . *[Belen's] sole obligation with respect to Fadian Development, Inc. is to transfer the stock interest referred to above.*

Id. (emphasis added).

On October 10, 2014, at the request of Belen, acting in her capacity of executrix of the Swegler Estate, Bae and Fadian's corporate secretary Sandra Pablo, executed a stock certificate, certifying that Swegler owned 80,000 shares of common stock in Fadian[1]. See Swegler Decl., Ex. D. In a report dated October 19, 2014, Attorney Ted Walters ("Attorney Walters") advised Bae that "it appears that a settlement has been reached between the executrix, Belen Swegler, and Mr. Swegler's children. Specifically, the children are to be awarded all Mr. Swegler's interest in Fadian." See Travis Decl., Ex. 13 at 9. Further, Attorney Walters advised Bae that if Fadian were to continue in its current form and shareholders, it would be comprised "40% with the Swegler children (who are the named heirs for Mr. Swegler's Fadian interests)". Id. at 13. On December 12, 2014, the Court in PR0118-12 issued its Order and Decree of Final Distribution, distributing Swegler's 80,000 shares of common stock in Fadian to Belen. See 1st Wolff Decl., Ex. C, D.

---

[1] On November 19, 2014, Bae filed the 2014 Annual Report for Fadian listing the following shareholders and their corresponding shares in the company: Myung Mok Bae (2001 shares); Dometro Pablo (18,000 shares); Delbert Swegler (80,000 shares); Keiza Ryu Bae (99,997 shares); Sandra M. Pablo (1 share); and Seoung Ho Chang (1 share). See Travis Decl., Ex. 6.

On December 23, 2015, the Baes and Su Heon Kim ("Kim") entered into a Limited Liability Company Agreement ("B&K LLC Agreement") establishing B&K Development, LLC, whereby Ryu held a 69% membership interest, Kim owning a 30% interest, and Bae a 1% interest in B&K. See Travis Decl., Ex. 9. Further, the B&K LLC Agreement provided that Bae would receive priority distribution of the first Twelve Million Dollars ($12,000,000.00) of the profits or gains earned by B&K as a result of its real estate development and leasing business. Id. Shortly thereafter, on December 30, 2015, Bae and Ryu, along with Sandra Pablo ("Pablo") and Seoung Ho Chang ("Chang"), signed a Resolution of Board of Directors of Fadian Development, Inc. ("December 30, 2015 Resolution"), consenting to the transfer of all Faidan corporate assets to B&K, pending approval from majority of Fadian's shareholders. See Travis Decl., Ex. 10. That same day, Bae, Ryu, Pablo, and Chang, executed a document titled Action by Written Consent of Shareholders of Fadian Development, Inc. ("December 30, 2015 Written Consent"), consenting to the transfer of all Fadian corporate assets to B&K and the dissolution of Fadian upon conclusion of such transfer. See Travis Decl., Ex. 11.

On March 3, 2016, Bae executed a Quitclaim Deed, purporting to transfer and convey thirty-three (33) parcels of real property owned by Fadian to B&K. See Travis Decl., Ex. 12. The Quitclaim Deed was filed and recorded at the Department of Land Management under instrument number 889557 the following day, March 4, 2016. Id. Bae executed the Quitclaim Deed on behalf of Fadian, and Ryu on behalf of B&K. Id. Notice was never provided to the Fadian shareholders, nor was a meeting held to discuss the transfer of assets and dissolution of Fadian. See Bae Tr. I, at 238:2-244:9; see also Ryu Tr., at 115:6-119:21. Further, Fadian did not receive any consideration from B&K for the transfer of the property to B&K. See Bae Tr. I, at 265:23-267:3; see also Ryu Tr., at 110:5-14, 113:21-114:7; see also Kim Tr. I, at 193:90194:5.

On May 26, 2016, the Swegler Heirs filed their Complaint in this matter, alleging in relevant part that they "are heirs of Delbert Swegler, and, along with their sister Karen Swegler, since 2014 have owned 80,000 shares of Fadian, and have continuously been shareholders of Fadian at all times relevant to the wrongdoing complaint of." See Compl. at ¶ 3. On January 30, 2017, Plaintiffs served upon the Baes their Initial Disclosures identifying and attaching the

Fourth Amended Articles of Incorporation of Fadian; the Quitclaim Deed recorded on March 4, 2016; the Notice of Interest and Required Consent recorded May 19, 2016; the August 1, 2016, Agreement between Fadian and Mariana Stones Corporation; and the Order and Decree of Final Distribution filed December 12, 2014, in PR0118-12. See 1st Wolff Dec. ¶ 2, Ex. A.

On November 9, 2018, Plaintiffs filed their Motion for Summary Judgment. On January 8, 2019, a hearing was held on Plaintiffs' Motion for Summary Judgment. At the hearing, Defendants brought up the issue of standing and requested that the Court allow Defendants to file their Motion to Dismiss. Without addressing the merits of the Motion for Summary Judgment, the Court briefly inquired into the issue of standing and the Swegler Heirs' shareholder interest in Fadian. Nonetheless, on January 23, 2019, the Court granted the Defendants leave to file their Motion to Dismiss and rescheduled oral arguments on Plaintiffs' Motion for Summary Judgment[2]. See Order After Hearing (Jan. 23, 2019).

On January 8, 2019, the Bae Defendants filed their Motion to Dismiss. Defendant B&K filed a Joinder to the Bae Defendants motion on February 4, 2019. Plaintiffs' filed their Opposition on February 5, 2019, and the Defendants filed their Reply on February 19, 2019. Finally, on February 25, 2019, Defendant B&K filed a Motion to Strike or in the Alternative, Motion for Leave of Court to Conduct Limited Discovery.

On May 7, 2019, the Court heard oral arguments on all three motions: 1) Plaintiffs' Motion for Summary Judgment; 2) Defendants' Motion to Dismiss; and 3) Defendant B&K's Motion to Strike or in the Alternative, Motion for Leave of Court to Conduct Limited Discovery. At the conclusion of the hearing, the Court took the matters under advisement.

## DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

---

[2] The Court also invited the parties to address specific issues regarding corporate law formalities, corporate notice requirements, and the vesting of interests within a corporation upon death or otherwise, in support of the parties' motion. See Order After Hearing (Jan. 23, 2019). Defendant B&K filed their Supplemental Brief re: Plaintiffs' Standing on February 19, 2019.

to any material fact and that the moving party is entitled to judgment as a matter of law." Guam R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Rule 56(c) of the GRCP further mandates summary judgment against a party, "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. A genuine issue of material fact exists if there is sufficient evidence which establishes a factual dispute requiring resolution by a fact-finder. Guam Pac. Enter., Inc. v. Guam Poresia Corp. et al., 2007 Guam 22. n. 8 (citing Iizuka Corp. v. Kawasho Int'l (Guam). Inc., 1997 Guam 10 ¶ 7). The factual dispute must also concern a fact "that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit." Id.

If the movant demonstrates a lack of a genuine issue of material fact, "the non-movant cannot merely rely on allegations contained in the complaint, but must produce at least some significant probative evidence tending to support the complaint." Edwards v. Pacific Fin. Corp. et al., 2000 Guam 27 n. 7 (citations omitted). Thus, the ultimate inquiry for the Court is "whether the 'specific fact' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." Bank of Guam v. Flores, 2004 Guam 25 n. 7. In determining a motion for summary judgment, "the court must draw inferences and view the evidence in a light most favorable to the non-moving party. Id.

The Swegler Heirs direct their Motion for Summary Judgment at all the causes of action set forth in their Complaint. In their Motion, the Swegler Heirs request that the Court grant summary judgment in its favor on the grounds that: 1) the Fadian property was improperly and illegally transferred to Defendant B&K; 2) Defendants Bae and Ryu owed and violated their duties to Fadian by transferring the Fadian property to Defendant B&K; and 3) Defendants Bae and Ryu aided and abetted each other's respective breach of their fiduciary duties to Fadian. Further, the Swegler Heirs also seek summary judgment on Defendant B&K's affirmative defense on the grounds that B&K did not pay valuable consideration for the Fadian Property and had notice of the Swegler Heirs' interest in the property. On the other hand, the Defendants

argue that the Swegler Heirs' arguments are either meritless as a matter of law or that they depend upon issues over which there is a genuine dispute of material facts.

## I.     The Fadian Property was improperly and illegally transferred to Defendant B&K.

That a shareholder is entitled to notice of a shareholder's meeting is "a proposition so fundamental as to require no citation of authority." Helmsman Mgmt. Servs., Inc. v. A & S Consultants, Inc., 525 A.2d 160, 166 (Del. Ch. 1987). Nevertheless, when a corporation contemplates the sale of assets other than in the regular course of business, Guam's General Corporation Law states that a "corporation *shall* notify each stockholder, whether or not entitled to vote, of the proposed stockholders' meeting . . . to consider the . . . disposition of all, or substantially all, the property of the corporation . . . ." 18 GCA § 4112(d) (emphasis added)[3]. Failure to notify shareholders renders corporate action approving the sale of corporate assets null and void. See Collins v. Telcoa Int'l Corp., 283 A.D.2d 128, 132, 726 N.Y.S.2d 679, 683 (2001) (citing Matter of Goldfield Corp. v. General Host Corp., 29 N.Y.2d 264, 269, 327 N.Y.S.2d 330, 227 N.E.2d 387 ("failure to give notice in accord with the statute and the corporate by-laws would have rendered the election void, and, if void, a new election would have been required even without a showing that the results of the election would, or might have been different.")).

Here, the Swegler Heirs argue that it is undisputed that the Bae Defendants executed the Quitclaim Deed purporting to transfer the Fadian Property to B&K, a company of which the Bae Defendants were members, without notice or approval of the remaining shareholders of Fadian. The Defendants, on the other hand, argue that it is undisputed that the Swegler Heirs were not record shareholders at the time of the conveyance at issue and thus, were not entitled

---

[3] Fadian, originally known as Jang Bok Developing Company, Ltd., was established on March 21, 1989. Thus, Fadian is governed by Part 1 of Title 18 of the Guam Code, known as "The General Corporation Law." See In the Matter of Call of Annual Meetings of Stockholders of Chamorro Equities, Inc., 2012 Guam 10 ¶ 7 ("In 2009, the Guam Business Corporation Act was enacted by Guam Public Law 29-144:1 [codified in 18 GCA Chapter 28], and all corporations formed after its effective date are governed by it. Title 18 GCA § 1101.1 provides: 'A corporation organized in Guam prior to the effective date of the Guam Business Corporation Act *shall not* be subject to the Guam Business Corporation Act, and *shall* continue to be governed by this part, except as provided in the Guam Business Corporation Act.'") (citations omitted).

to notice of any shareholder meetings or proposed actions. Specifically, the Defendants argue that because the Swegler Heirs were not record shareholders, they lack standing to bring the instant derivative action on behalf of Fadian.

The Court adopts the findings of the Court's Decision and Order on Defendant B&K's Motion to Strike and the Bae Defendants' Motion to Dismiss issued on August 5, 2019, and finds that the Swegler Heirs were, at all relevant times, *equitable* shareholders entitled to pursue this derivative action on behalf of Fadian. See Delle Swegler Nadler, et al. vs. Myung Mok Bae, et al., Civil Case No. CV0452-16, *Decision and Order*. Thus, because the Swegler Heirs were shareholders at the time of the purported conveyance, the Court finds that the Swegler Heirs were also entitled to notice of Fadian's intent to transfer its sole asset to B&K. See 18 GCA § 4112(d). Mindful of these findings, the Court will now examine the facts relevant to the instant summary judgment motion.

Here, the Defendants concede that they were required to provide notice to *all* shareholders regarding the proposed transfer of all or substantially all of Fadian's corporate assets. See 18 GCA § 4112. However, the Defendants concedes that they did not notify or seek approval from the Swegler Heirs prior to executing the Quitclaim Deed of the Fadian property because they believed the Swegler Heirs were not shareholders of Fadian. Nonetheless, it is undisputed that the Defendants, at the very least, had actual notice of the Swegler Heirs' interest in Delbert Swegler's Fadian shares at the time the Board of Directors, the Bae Defendants, Pablo and Chang, as Fadian shareholders, purportedly consented to the transfer. See Travis Decl., Ex. 10 (December 30, 2015 Resolution) and Ex. 11 (December 30, 2015 Written Consent). In a report dated October 19, 2014, Attorney Ted Walters advised Bae that "it appears that a settlement has been reached between the executrix, Belen Swegler, and Mr. Swegler's children. Specifically, the children are to be awarded all Mr. Swegler's interest in Fadian." See Travis Decl., Ex. 13 at 9. Further, Attorney Walters advised Bae that if Fadian were to continue in its current form and shareholders, it would be comprised "40% with the Swegler children (who are the named heirs for Mr. Swegler's Fadian interests)". Id. at 13. It is also undisputed that the Bae Defendants were aware of the pendency of the Probate Case in PR0118-12, and

that Delbert Swegler's 80,000 Fadian shares were assets of the probate estate. See 1st Wolff Decl., Ex. C, D (On December 12, 2014, the Court in PR0118-12 issued its Order and Decree of Final Distribution, distributing Delbert Swegler's 80,000 shares of common stock in Fadian to Belen).

Based on the foregoing, it is undisputed that the Bae Defendants failed to provide notice to Delbert Swegler, his Estate, or the Swegler Heirs of their intent to transfer the Fadian Property and divest Fadian of all its assets. Therefore, because the Bae Defendants failed to comply with the mandatory notice requirements of 18 GCA § 4112(d), the Court finds that the Bae Defendants' actions purporting to convey title of the Fadian Property to B&K are invalid. Therefore, because Defendant Bae was not authorized to execute the Quitclaim Deed on behalf of Fadian, or to otherwise effect a transfer of Fadian Property to B&K the Fadian Property on behalf of Fadian, the Quitclaim Deed purporting to convey the Fadian Property to B&K is *null and void*. See Collins, 283 A.D.2d 128 at 132. Accordingly, the Court **GRANTS** the Swegler Heirs' Motion for Summary Judgment as to the First and Second Causes of Action in the Verified Complaint insofar as they are based on the Plaintiffs' claims to Quiet Title and the Cancellation of Instruments, and **DECLARES** the Quitclaim Deed purporting to convey the Fadian Property to B&K is *null and void*.[4] See Verified Compl., at 8-9.

## II.    B&K is not a bona fide purchaser of the Fadian Property.

The Supreme Court of Guam has held "that in order to avail oneself of the protections of Guam's Land Title Registration Law, 21 GCA § 29101 *et seq.*, one must be either an initial registrant or a *bona fide purchaser*." Camacho v. Estate of Gumataotao, 2010 Guam 1 ¶ 36 (citing Pelowski v. Taitano, 2000 Guam 34 ¶ 34) (emphasis added). "Under the bona fide purchaser doctrine, a good faith real estate purchaser for value who is without actual or constructive notice of another's interest in the property purchased has the superior interest in the property." Taitano v. Lujan, 2005 Guam 26 ¶ 27 (citing 21 GCA ¶ 37102); see also Morioka v. I

---

[4] Having declared the Quitclaim Deed purporting to convey the Fadian Property to B&K null and void for failure to comply with the mandatory notice requirements of 18 GCA § 4112(d), the Court need not address the Swegler Heirs' alternative argument regarding the Defendants' failure to comply with the voting requirements of 18 GCA § 4112(e) and the Fourth Amended Articles of Incorporation. See Mot. Summ. J., at 11-12; see also Reply, at 8-9.

& F Corp., No. 91-00027A, 1991 WL 255842, at *3 (D.Guam App. Div. Nov. 18, 1991) ("To become a bona fide purchaser of property one must acquire title through payment of value, in good faith, and without actual or constructive notice of another's rights.").

Here, the Swegler Heirs argue that they are entitled to summary judgment as a matter of law as to B&K's affirmative defense that it is a bona fide purchaser of the Fadian Property, because B&K did not pay valuable consideration and had notice of the Swegler Heirs' Interest in Fadian and the Fadian Property. The Defendants, on the other hand, argue that the consideration received by Fadian would have been approximately Twelve Million Dollars ($12 million). Specifically, the Defendants claim that B&K paid consideration for the Fadian Property through the B&K Agreement which provided for a priority distribution of $12 million dollars of the profits earned from any subsequent development of real estate, to be distributed to Defendant Bae. See Travis Decl., Ex. 9 ("Twelve Million U.S. Dollars . . . of the profits or gains earned by the Company as a result of real estate development and leasing business ("Priority Distribution"), shall be distributed to Myung Mok Bae first at such time(s) as determined by the managing Member . . ."). The Defendants maintain that Defendant Bae intended to share a portion of the $12 million priority distribution he would receive from B&K with the Fadian shareholders, including the Swegler Heirs. See Bae Tr. At 192:9-17.

As a preliminary matter, the Supreme Court of Guam has recognized that "it is a matter of common knowledge that where a consideration of one dollar is mentioned in a contract, other considerations usually pass between the parties to the agreement. A consideration of one dollar is ordinarily sufficient to support a contract at law." Abers v. Rounsavell, 116 Cal. Rptr. 3d 860, 870 (Ct. App. 2010) (citations omitted); see also San Diego City Firefighters, Local 145, AFL-CIO v. Bd. of Admin. of San Diego City Emps.' Ret. Sys., 141 Cal.Rptr.3d 860, 880 (2012) ("[A]ll that the law requires for sufficient consideration is the proverbial 'peppercorn.'" (citations omitted))[5]. In the present case, the "Affidavit of Consideration" executed on March 3,

---

[5] Title 21 GCA § 37102 was adopted from the California Civil Code and thus, related California law is instructive. See Damian v. Damian, 2015 Guam 12 ¶ 55 (citing Taitano, 2005 Guam 26 ¶ 52) (noting that 21 GCA § 37102 was adopted from California Civil Code section 1214).

2016, by Defendant Bae on behalf of Fadian, and Defendant Ryu on behalf of B&K, explicitly states that the consideration or value given for the Fadian Property was *zero dollars ($0)*. See Travis Decl., Ex. 12 at RFPOD – 167 (emphasis added). The Defendants however, concede that while no money was paid directly to Fadian at the time of conveyance, consideration was nonetheless provided for in the B&K Agreement, wherein Defendant Bae would receive a $12 million Priority Distribution over time. However, nowhere in the B&K Agreement does it state that the $12 million Priority Distribution would be consideration for the Fadian Property, nor does the Quitclaim Deed or the "Affidavit of Consideration" reference the B&K Agreement with respect any consideration. What is clear however, is that any distribution made pursuant to the B&K Agreement would be made solely to Bae, not to Fadian or any other shareholders. The fact that Defendant Bae merely intended to compensate the Fadian shareholders with a percentage of the $12 million Priority Distribution is an illusory promise and not valid consideration. See Mesngon v. Government of Guam, 2003 Guam 3 ¶ 10 ("An illusory promise is defined as 'one that is so indefinite that it cannot be enforced, or by its terms makes performance optional or entirely discretionary on the part of the promisor.") (citations omitted); see also Ridge Runner Forestry v. Veneman, 287 F.3d 1058, 1061 (Fed.Cir.2002) ("[I]llusory promise is . . . words in promissory form that promise nothing; they do not purport to put any limitation on the freedom of the alleged promisor, but leave his future action subject to his own future will, just as it would have been had he said no words at all.") (citations omitted). At best, the purported conveyance reeks of fraud. Accordingly, because B&K did not pay valuable consideration to Fadian for the Fadian Property, the Court finds that B&K is not a bona fide purchaser under Guam law. See 21 GCA ¶ 37102.

Assuming *arguendo* that the Defendants paid valuable consideration for the Fadian Property, B&K did not engage in a good-faith transaction with Fadian. It is undisputed that both Defendant Bae and Defendant Ryu held interest in B&K prior to the execution of the Quitclaim Deed. See Travis Decl., Ex. 9 (the B&K Agreement reflects that Ryu held a 69% membership interest, Kim owning a 30% interest, and Bae a 1% interest in B&K). It is equally undisputed that B&K had notice of the Swegler Heirs' interest in Fadian Property. As discussed in Section

I, *supra*, both Defendant Bae and Defendant Ryu knew of Delbert Swegler's 40% ownership of Fadian shares and consequently, of the Swegler Heirs' interest in Fadian. See Bae Tr. At 254:5-256:3. Nonetheless, Defendant Ryu, the majority shareholder of B&K, personally executed the deed on behalf of B&K with full knowledge that Fadian had other shareholders and without providing notice to those Fadian shareholders of the transfer. See Ryu T. at 115:21-116:2. Further, Kim, the third member of B&K, was also aware of the Swegler Heirs' interest in the Fadian Property. See Bae Tr. At 244:10-19. Therefore, because B&K did not engage in a good-faith, arms-length transaction with Fadian, and clearly had notice of the Swegler Heirs' interest in the Fadian Property, the Court finds that B&K is not a bona fide purchaser under Guam law. See 21 GCA ¶ 37102.

Accordingly, the Court **GRANTS** the Swegler Heirs' Motion for Summary Judgment as to B&K's affirmative defense that it is a bona fide purchaser. Having determined that B&K does not have a superior claim to title over the Fadian Property, the Court hereby **DECLARES** and **ORDERS** the Quitclaim Deed purporting to transfer the Fadian Property to B&K *cancelled*, and *title quieted* in favor of Fadian.

### III.    Fiduciary Duties

It is a well settled principle that corporate directors owe a fiduciary duty to the corporation and its shareholders. Berg & Berg Enterprises, LLC v. Boyle, 178 Cal. App. 4th 1020, 1037 (2009); see Pepper v. Litton, 308 U.S. 295, 311 (1939) ("A director is a fiduciary. . . . He who is in such a fiduciary position cannot serve himself first and his *cestuis* second. . . . Where there is a violation of those principles, equity will undo the wrong or intervene to prevent its consummation."); Generally, directors of a corporation have a duty to act with honesty, loyalty, and good faith. Id. (citations omitted). Corporate directors have an "unyielding fiduciary duty to protect the interest of the corporation and to act in the best interest of its shareholders." Cent. Laborers' Pension Fund v. McAfee, Inc., 17 Cal. App. 5th 292, 312 (Ct. App. 2017) (citing Cede & Co. v. Technicolor, Inc., 634 A.2d 345, 360 (Del. 1993). Hence, the best interest of the corporation and its shareholders takes precedence over any interests held by a director. Id. at 317.

Here, the Swegler Heirs argue that it is undisputed that the Bae Defendants breached their fiduciary duties owed to Fadian. Specifically, the Swegler Heirs argue that both Defendants Bae and Ryu acted to deprive Fadian of its only asset by attempting to transfer the Fadian Property to B&K for their own benefit, a company in which Ryu held the majority interest, and from which Bae stood to gain $12 million in priority distributions. Additionally, the Swegler Heirs argue that the Bae Defendants breached their fiduciary duties by deliberately failing to notify the Swegler Heirs of the purported transfer to B&K. The Bae Defendants, on the other hand, argue that they did not breach any fiduciary duty for the same arguments the Court previously rejected above. See Section I and II, *supra*; see also Delle Swegler Nadler, et al. vs. Myung Mok Bae, et al., Civil Case No. CV0452-16, *Decision and Order*.

Here, the Court finds that both Defendants Bae and Ryu breached their fiduciary duties they owed to Fadian. As argued by the Swegler Heirs, both Bae and Ryu held an interest in B&K, with Ryu holding a 69% membership interest and Bae holding a 1% interest. Additionally, the B&K agreement clearly provided that Bae would receive a priority distribution of the first $12 million in profits earned by B&K from its real estate and leasing business. It is also undisputed that the Fadian Property was the only purported asset of B&K, that which the Baes intended to transfer on behalf of Faidan. See McCrae Assocs., LLC v. Universal Capital Mgmt., Inc., 746 F. Supp. 2d 389, 400-01 (D. Conn. 2010) ("Classic examples of director self-interest in a business transaction involve either a director appearing on both sides of a transaction or a director receiving a personal benefit from a transaction not received by the shareholders generally."). Further, as the Court determined above, the Bae Defendants failed to comply with the mandatory notice requirements of 18 GCA § 4112(d) by deliberately failing to notify other Fadian shareholders of their intent to transfer the Fadian Property to B&K thus divesting Fadian of all its assets. See Loy v. Lorm Corp., 52 N.C. App. 428, 435 (1981) ("[D]irectors of the transferor corporation must adopt a resolution recommending the transfer and directing its submission to a vote at a meeting of shareholders. . . . [F]ailure to conform to these mandates . . . constitutes a breach of a director's fiduciary duty as well as a breach of the majority stockholders' duty to the minority."). Thus, the Court finds

that the Bae Defendants, in acting to deprive Fadian of its only asset by attempting to transfer the Fadian Property to B&K for their own benefit, breached their fiduciary duties to Fadian.

The Court similarly finds that the Bae Defendants aided and abetted each other's breach of fiduciary duties[6]. Here, it is undisputed that Defendant Bae prepared and presented Defendant Ryu with the Quitclaim Deed, which enabled Defendant Ryu to participate in the improper and illegal transfer of Fadian Property to B&K. Further, it is undisputed that Defendant Ryu knew of Defendant Bae's actions constituting a breach of his fiduciary duties to Fadian and, in her inaction, supported Defendant Bae's efforts to deprive the Swegler Heirs of proper notice of the transfer. Thus, the Court finds that both Defendant Bae and Ryu are liable for aiding and abetting each other's breach of fiduciary duties.

Accordingly, the Court **GRANTS** the Swegler Heirs' Motion for Summary Judgment as to the Third, Fourth, and Fifth Causes of Action in the Verified Complaint insofar as they are based on the Plaintiffs' claims that Defendants Bae and Ryu breached their fiduciary duties to Fadian by transferring the Fadian Property to B&K, as well as aided and abetted each other's breach of their fiduciary duties. See Verified Compl., at 10-12.

## CONCLUSION

For the foregoing reasons, because the Bae Defendants failed to comply with the mandatory notice requirements of 18 GCA § 4112(d), the Court finds that the Bae Defendants' actions purporting to convey title of the Fadian Property to B&K are invalid and thus, **GRANTS** the Swegler Heirs' Motion for Summary Judgment as to the First and Second Causes of Action in the Verified Complaint insofar as they are based on the Plaintiffs' claims to Quiet Title and the Cancellation of Instruments, and **DECLARES** the Quitclaim Deed purporting to convey the Fadian Property to B&K is *null and void.*

---

[6] The elements of the common law tort of aiding and abetting breach of fiduciary duty are: (1) the primary tortfeasor breaches a fiduciary duty which he owes to the victim-plaintiff; (2) the aider-abettor defendant has actual knowledge of the breach, i.e., the specific primary wrong; (3) the aider-abettor defendant lends the primary tortfeasor substantial assistance or encouragement in committing the breach; and (4) the victim-plaintiff suffers damages proximately caused by the breach. Lujan v. Girardi/Keese, Civil Case No. 09-00017, 2009 WL 2567302, at *6 (D.Guam, August 18, 2009) (citations omitted).

For the foregoing reasons, the Court **GRANTS** the Swegler Heirs' Motion for Summary Judgment as to B&K's affirmative defense that it is a bona fide purchaser. Having determined that B&K does not have a superior claim to title over the Fadian Property, the Court hereby **DECLARES** and **ORDERS** the Quitclaim Deed purporting to transfer the Fadian Property to B&K *cancelled*, and *title quieted* in favor of Fadian.

Lastly, for the foregoing reasons the Court **GRANTS** the Swegler Heirs' Motion for Summary Judgment as to the Third, Fourth, and Fifth Causes of Action in the Verified Complaint insofar as they are based on the Plaintiffs' claims that Defendants Bae and Ryu breached their fiduciary duties to Fadian by transferring the Fadian Property to B&K, as well as aided and abetted each other's breach of their fiduciary duties.

**IT IS SO ORDERED** NOV 0 4 2019 .

---
**HONORABLE ARTHUR R. BARCINAS**
**Judge, Superior Court of Guam**

SERVICE VIA COURT BOX

judge that a copy of the foregoing was placed in the box of:

L' TRAVIS, Lujan
G. Concepcion
11/4 Time: 10AM

Deputy Clerk, Superior Court of Guam